# United States Court of Appeals for the Federal Circuit

AFTG-TG, LLC AND PHILLIP M. ADAMS & ASSOCIATES, LLC,
*Plaintiffs-Appellants,*

v.

NUVOTON TECHNOLOGY CORPORATION AND NUVOTON TECHNOLOGY CORPORATION AMERICA,
*Defendants,*

AND

PEGATRON CORPORATION, PEGATRON TECHNOLOGY SERVICE, INC., AND UNIHAN,
*Defendants-Appellees.*

———————————

2011-1306

———————————

AFTG-TG, LLC AND PHILLIP M. ADAMS & ASSOCIATES, LLC,
*Plaintiffs-Appellants,*

v.

WINBOND ELECTRONICS CORPORATION and WINBOND ELECTRONICS CORPORATION AMERICA,
*Defendants,*

AND

**ASUSTEK COMPUTER INC. and ASUS
COMPUTER INTERNATIONAL, INC.,**
*Defendants-Appellees,*

AND

**MSI COMPUTER CORP. and MICRO-STAR
INTERNATIONAL CORPORATION LTD.,**
*Defendants.*

————————————

2011-1307

————————————

Appeals from the United States District Court for the District of Wyoming in case nos. 10-CV-0227 and 10-CV-0229, Judge Nancy D. Freudenthal.

————————————

Decided:  August 24, 2012

————————————

GREGORY D. PHILLIPS, Dumke Law, LLC, of Salt Lake City, Utah, argued for plaintiffs-appellants.  On the brief was EZEKIEL R. DUMKE, IV, Quinn Dumke LLC, of Salt Lake City, Utah.

RONALD S. LEMIEUX, Cooley LLP, of Palo Alto, California, argued for defendants-appellees.  With him on the brief was VIDYA R. BHAKAR.

————————————

Before RADER, *Chief Judge*, NEWMAN, and O'MALLEY, *Circuit Judges*.

Per Curiam opinion filed by the court. *Chief Judge* Rader concurs.

PER CURIAM.

AFTG-TG LLC ("AFTG") and Phillip M. Adams & Associates, LLC ("Adams") (collectively "AFTG") appeal the United States District Court for the District of Wyoming's dismissal of defendants Pegatron Corporation ("Pegatron"), Pegatron Technology Service, Inc. ("PTS"), Unihan, ASUSTeK Computer Inc. ("ASUSTeK"), and ASUS Computer International ("ASUS") for lack of personal jurisdiction. Because the record and pleadings demonstrate insufficient contacts with the forum state, this court affirms.

## I.

AFTG filed two actions in the District of Wyoming, claiming that the defendants infringe several of its patents. Pegatron, PTS, and Unihan are named as defendants in one case; ASUSTeK and ASUS are named as defendants in the other. AFTG's allegations are the same in both cases. The complaints generally allege that the defendants' manufacturing, use, testing, and importation of computer chips, motherboards, computers, and other products directly infringe AFTG's patents and that the defendants knowingly and intentionally induce and contribute to others' infringement. A list of asserted claims for the patents-in-suit accompanies the infringement assertions. The complaint against Pegatron, PTS, and Unihan also alleges misappropriation of trade secrets. In both cases, the defendants filed motions to dismiss for lack of personal jurisdiction.

Because the district court relied on the complaint and

written submissions without holding an evidentiary hearing, AFTG is required to allege only a prima facie showing that the defendants are subject to personal jurisdiction in Wyoming. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). For purposes of this evaluation, this court accepts uncontroverted allegations in the complaint as true and resolves factual disputes in the plaintiffs' favor. *Id.*

The district court evaluated its personal jurisdiction under Wyoming's long-arm statute. *See Trintec Indus. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005). Its two-step analysis first looked to the state long-arm statute and then determined the proper application of due process requirements. *Id.* Wyoming's personal jurisdiction statute explicitly reaches to the full extent of the United States and Wyoming constitutions. *See e.g.*, Wyo. Stat. Ann. § 5-l-107(a) ("A Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution."); *Markby v. St. Anthony Hosp. Sys.*, 647 P.2d 1068, 1070 (Wyo. 1982). Because Wyoming's long-arm statute incorporates the reach of due process, the district court collapsed the jurisdictional analysis into a single due process inquiry.

Personal jurisdiction takes two forms: specific and general. "Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.' . . . General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985), and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)). In the present case,

general jurisdiction is not at issue; accordingly, the district court evaluated its specific jurisdiction over the defendants. Specific jurisdiction entails a three-part test: (1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

AFTG asserted similar allegations in the action against ASUSTeK and ASUS, and in the action against Pegatron, PTS, and Unihan. AFTG does not claim that these defendants engaged in direct sales in Wyoming. Instead, AFTG argues for jurisdiction under a "stream-of-commerce" theory, contending that the defendants sold their products to various companies, who in turn sold them to consumers in Wyoming.

The district court found AFTG's "bare formulaic accusation," which simply parroted the statutory language, insufficient to establish personal jurisdiction. The district court reasoned that the complaint did not allege sufficient facts to demonstrate minimum contacts with Wyoming. In particular, the trial court found that AFTG's stream-of-commerce theory was mere conjecture. AFTG merely speculated that the defendants placed accused devices into the stream of commerce, knowing they would reach Wyoming. The record did not contain any evidence and the complaint did not allege any facts that demonstrated the defendants' contacts with Wyoming. In the absence of such allegations, the district court rejected AFTG's stream-of-commerce arguments.

In AFTG's action against Pegatron, PTS, and Unihan, the district court noted there was "no evidence or allegation that the infringing technologies or products actually

reached Wyoming. . . . [T]he closest evidence is the contributory infringement and inducement claims that refer generally to users in Wyoming. These claims are insufficient to permit the exercise of the Court's jurisdiction." Likewise, the district court determined that AFTG's misappropriation-of-trade-secrets claim against Pegatron, PTS, and Unihan did not establish jurisdiction. The complaint vaguely alleged improper conduct in the form of the knowing use of proprietary technology protected by trade secret. According to the district court, neither the record nor the complaint set forth anything more than a conclusory accusation without a claim of any specific use of trade secrets within Wyoming. Likewise, AFTG's supporting exhibits, which included copies of the patents, assignment, and incorporation records, related to standing and did not support personal jurisdiction. Because AFTG did not provide sufficient facts to support its claims and allegations of contacts with Wyoming, the district court determined that AFTG did not make a prima facie showing of personal jurisdiction and dismissed the claims against Pegatron, PTS, and Unihan without prejudice.

In the related action against ASUSTeK and ASUS, the district court reviewed declarations regarding those defendants' contacts with Wyoming. ASUS admitted making drop shipments to Wyoming addresses at the instruction of its third-party resellers. The resellers were not residents of Wyoming. Because the shipments were not initiated by ASUS, but at the direction of third-party resellers, the district court found no purposeful direction toward Wyoming. In addition, the district court noted that AFTG did not allege or otherwise assert that its infringement claims arose from or were otherwise related to these drop shipments. The record, moreover, contained no evidence that the shipments included infringing products. Given the extremely limited nature of ASUS's

contacts, and the lack of any alleged contacts by ASUSTeK, the district court concluded that exercising personal jurisdiction in Wyoming was inappropriate. The district court, accordingly, dismissed the claims against ASUS and ASUSTeK.

We now review the district court's dismissal of both actions.

## II.

The Supreme Court has yet to reach a consensus on the proper articulation of the stream-of-commerce theory. In the absence of such a consensus, this court has assessed personal jurisdiction premised on the stream-of-commerce theory on a case-by-case basis by inquiring whether the particular facts of a case support the exercise of personal jurisdiction. The district court employed that fact-driven approach in these actions and correctly found insufficient contacts to support the exercise of personal jurisdiction in Wyoming.

## A.

The Supreme Court recently revisited the stream-of-commerce theory in *McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). The Court, however, declined to resolve its long-standing split on that theory.

In *McIntyre*, the Court was asked to revisit questions left open in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987). In *Asahi*, the Court's members disagreed whether a defendant could be subject to personal jurisdiction in a forum merely because the defendant had placed a product in the stream of commerce. Justice Brennan, writing for four Justices, evaluated personal jurisdiction under the stream-of-commerce theory by relying on considerations of foreseeability. Justice Brennan wrote that "jurisdiction prem-

ised on the placement of a product into the stream of commerce is consistent with the Due Process Clause," for "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi*, 480 U.S. at 117 (opinion concurring in part and concurring in the judgment).

Justice O'Connor and three other Justices rejected Justice Brennan's approach. In their view, mere foreseeability or awareness that "the stream of commerce may or will sweep the product into the forum State" is insufficient. *Id.* at 112. Justice O'Connor wrote:

> The substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.

*Id.* (citing *Burger King*, 471 U.S. at 476; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)) (internal quotation marks omitted).

Because neither Justice Brennan's nor Justice O'Connor's test garnered a majority of the votes in *Asahi*, neither test prevailed as the applicable precedent.

The Court declined to resolve the *Asahi* split in *McIntyre*. In a plurality opinion, Justice Kennedy acknowledged the imprecision of the metaphor "stream of commerce," stating that "[i]t refers to the movement of goods from manufacturers through distributors to consumers, yet beyond that descriptive purpose its meaning

is far from exact." *McIntyre*, 131 S. Ct. at 2788. The plurality sided with Justice O'Connor's approach in *Asahi*, concluding that the "principal inquiry" is "whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must 'purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Justice Kennedy noted that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* He further reasoned that Justice Brennan's approach was inconsistent with precedent, holding that "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 2789. A court's jurisdiction, in other words, is "a question of authority rather than fairness." *Id.*

Justice Breyer, joined by Justice Alito, declined to join Justice Kennedy's plurality opinion. Justice Breyer further declined to endorse revising the jurisdictional standard at all. He acknowledged that developments in commerce and communication, such as globalization, have occurred since the Court last considered the stream-of-commerce theory. *Id.* at 2791. Such "modern-day consequences" were not at issue in *McIntyre*, however, and Justice Breyer deemed it unwise to revise the jurisdictional standard in a case that did not present those consequences. *Id.* He wrote:

> [O]n the record presented here, resolving this case requires no more than adhering to our precedents. . . . I would not go further. Because the incident at issue in this

> case does not implicate modern concerns, and because the factual record leaves open many questions, this is an unsuitable vehicle for making broad pronouncements that refashion basic jurisdictional rules.

*Id.* at 2792-93. Thus, the crux of Justice Breyer's concurrence was that the Supreme Court's framework applying the stream-of-commerce theory—including the conflicting articulations of that theory in *Asahi*—had not changed, and that the defendant's activities in *McIntyre* failed to establish personal jurisdiction under any articulation of that theory. *Id.*

Because *McIntyre* did not produce a majority opinion, we must follow the narrowest holding among the plurality opinions in that case. *Marks v. United States*, 430 U.S. 188, 193 (1977). The narrowest holding is that which can be distilled from Justice Breyer's concurrence—that the law remains the same after *McIntyre*.

## B.

Because we must proceed on the premise that *McIntyre* did not change the Supreme Court's jurisdictional framework, we must apply our precedent that interprets the Supreme Court's existing stream-of-commerce precedents. That precedent is *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994).

In *Beverly Hills Fan*, this court found sufficient contacts with the forum state, Virginia, to support the exercise of personal jurisdiction under any articulation of the stream-of-commerce theory. We took as true the allegation that the defendants made ongoing and continuous shipments of the accused infringing product into Virginia and maintained an established distribution network that encompassed Virginia. 21 F.3d at 1561, 1563, 1565. It

was undisputed, for example, that fifty-two of the infringing products were available for sale in Virginia. *Id.* at 1564. We further found sufficient support in the pleadings that the defendants derived revenue sufficient to satisfy the "substantial revenue" requirement under the Virginia long-arm statute. *Id.* at 1571. Based on these facts, we believed it was clear that the exercise of personal jurisdiction in Virginia was appropriate.

This court recognized in *Beverly Hills Fan* that the Supreme Court's stream-of-commerce precedent was left unsettled after *Asahi*. *Id.* at 1566-67. This court, however, refused to "join [the] debate" between Justice O'Connor's and Justice Brennan's approaches because it concluded that, on the facts of the case before it, sufficient contacts with the forum state existed to support the exercise of personal jurisdiction on any articulation of the stream-of-commerce theory. *Id.* ("[U]nder either version of the stream of commerce theory, . . . plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process . . . .") Thus, *Beverly Hills Fan* counsels that we refrain from taking a position on the proper articulation of the stream-of-commerce theory where the facts of a particular case mandate exercising or declining to exercise personal jurisdiction under any articulation of that theory. *Beverly Hills Fan*, in other words, stands for the cardinal rule that a court should not decide a legal issue when doing so is unnecessary to resolve the case at hand.

Subsequent panels of this court have followed that rule, finding that the evidentiary record before them made the result clear, or could make the result clear after further discovery, without requiring the court to take a side on the *Asahi* divide. In *Viam Corp. v. Iowa Export-Import Trading Co.*, we found that personal jurisdiction lay in the forum state based on the record before us and

without "join[ing] the debate in *Asahi* as to which version of the stream of commerce theory is the correct one, because under either theory the result we reach here would be the same." 84 F.3d 424, 428 (Fed. Cir. 1996). In *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, this court held that the defendants' contacts with the forum state satisfied Justice Brennan's test, but found the record insufficient to determine whether those contacts also satisfied Justice O'Connor's test. 395 F.3d 1315, 1321-22 (Fed. Cir. 2005). This court, therefore, found it premature to take a position on the *Asahi* split. *Id.* at 1322. This court, instead, remanded the case to the district court for jurisdictional discovery. "If [the plaintiff] is able to satisfy Justice O'Connor's test [after discovery], there will be no need to address whether the less restrictive test proposed by Justice Brennan should be the standard under [the forum state's law] and under the due process clause." *Id.* at 1324. Finally, in *Avocent Huntsville Corp. v. Aten International Co.*, a declaratory judgment action, we noted that the panel in *Beverly Hills Fan* declined to take a position on *Asahi*. 552 F.3d 1324, 1332 (Fed. Cir. 2008). We declined to take a position in *Avocent Huntsville* as well. Rather, we found that personal jurisdiction did not lie in the forum state because, even if the patentee defendant had contact with the forum state, there was no showing that the issues of invalidity and noninfringement at issue in the declaratory judgment action were related to that contact. *Id.* at 1338.

Here, we adhere to the *Beverly Hills Fan* line of cases and decline to take a position on the stream-of-commerce theory, because the result is clear and would not change under any articulation of that theory. The paltry allegations in the complaint cannot support the exercise of personal jurisdiction in Wyoming. A comparison of the facts here to those in *Beverly Hills Fan* makes that con-

clusion apparent. The defendants' contacts with the forum state in *Beverly Hills Fan* were significantly more extensive than they are here, where, at most, one of the defendants made isolated shipments to Wyoming at the request of third parties. Unlike in *Beverly Hills Fan*, moreover, the cause of action for patent infringement here does not arise out of the isolated Wyoming shipments. AFTG has failed to submit any declarations identifying sales in Wyoming that would refute the defendants' assertions that their contacts with Wyoming are sporadic at best. Finally, AFTG has proffered no evidence indicating that Wyoming was part of any defendant's continuous, established distribution channels, which was a significant factor supporting the exercise of personal jurisdiction in *Beverly Hills Fan*. 21 F.3d at 1566 n.6.

As the district court aptly observed, AFTG's complaint represents nothing more than "bare formulaic accusation" that the defendants maintain sufficient contacts with Wyoming. This case is not a close call, regardless of how one articulates the stream of commerce theory.

## III.

The concurrence agrees with the result we reach but attempts to distill a new rule of law from Justice Breyer's concurrence in *McIntyre*. We recognize the concurrence's desire to promote predictability in the application of the stream-of-commerce theory—an issue that has remained unsettled for more than two decades. That objective, however, is untenable in light of Justice Breyer's confirmation in *McIntyre* that the law remains unchanged.

Contrary to the concurrence's assertion, Justice Breyer did not articulate an applicable rule of law or endorse Justice O'Connor's reasoning in *Asahi* when he observed that "something more" than placing a single item in the stream of commerce, with the knowledge that

a sale may take place in the target forum state, is necessary to establish personal jurisdiction. *McIntyre*, 131 S. Ct. at 2792. Rather, he merely observed that, even Justices who have disagreed on the proper articulation of the stream-of-commerce theory have agreed that "a single isolated sale, even if accompanied by the kind of sales effort indicated here," is insufficient to establish personal jurisdiction. *Id.* Justice Breyer could not have been clearer when he wrote that, "on the record presented here, resolving this case requires no more than adhering to our precedents. . . . I would not go further." *Id.* at 2792-93.

By attempting to craft a new rule of law from Justice Breyer's observation, the concurrence disregards *Beverly Hills Fan*'s directive that this court decline to take a position on *Asahi* when doing so is unnecessary to resolve the case at hand. District courts have adhered to the doctrine of stare decisis after *McIntyre*, concluding that they are obligated to follow their existing circuit precedent—even with the awareness that doing so furthers the *Asahi* divide. As one district court observed:

> Because the Supreme Court in *McIntyre* did not conclusively define the breadth and scope of the stream of commerce theory, as there was not a majority consensus on a singular test, . . . and given Justice Breyer's decision to rely on current Supreme Court precedents, [this] Court will continue to adhere to the Sixth Circuit's analysis of purposeful availment [which adopts Justice O'Connor's approach in *Asahi*.]

*Lindsey v. Cargotec USA, Inc.*, No. 4:09-cv-71, 2011 U.S. Dist. LEXIS 112781, at *19 (W.D. Ky. Sept. 30, 2011)

(internal citation and quotation marks omitted). As
another district court observed:

> As Justice Breyer declined to choose be-
> tween the *Asahi* plurality opinions, *McIn-*
> *tyre* is rather limited in its applicability.
> It does not provide the Court with grounds
> to depart from the Fifth Circuit prece-
> dents establishing Justice Brennan's
> *Asahi* opinion as the controlling analysis.

*Ainsworth v. Cargotec USA, Inc.*, No. 2:10-cv-236, 2011
U.S. Dist. LEXIS 109255, at \*19 (S.D. Miss. Sept. 23,
2011) (citations omitted). The concurrence believes that
"this court would benefit from application of Justice
Breyer's approach to personal jurisdiction." Concurring
op. at 3. Just as the district courts are obligated to follow
their existing circuit precedent, however, we are obligated
to follow prior panel opinions of this court, not an obser-
vation that failed to receive endorsement from a majority
of the Supreme Court's members.

The concurrence's approach, moreover, is unwise be-
cause Justice Breyer's observation that the Supreme
Court has never held that "a single isolated sale" is insuf-
ficient to establish personal jurisdiction may be incorrect.
*See McIntyre*, 131 S. Ct. at 2792. In *McGee v. Interna-*
*tional Life Insurance Co.*, the Court endorsed the exercise
of personal jurisdiction in California where a Texas-based
insurance company collected premiums on a single insur-
ance contract purchased by a California citizen. 355 U.S.
220, 222-24 (1957).[1] Commentators have criticized Jus-

---

[1] This court has created its own body of stream-of-
commerce precedent in patent cases rather than apply the
case law of the regional circuits. This approach is based
on our view that the issue "is a critical determinant of
whether and in what forum a patentee can seek redress

tice Breyer's failure to address *McGee*. One commentator called it a "misunderstanding of Supreme Court precedent." Todd David Peterson, *The Timing of Minimum Contacts After Goodyear and McIntyre*, 80 Geo. Wash. L. Rev. 202, 226 (2011). Another commentator observed that, "by not mentioning *McGee*, [Justice Breyer] absolved himself of distinguishing between the single policy sufficient there and J. McIntyre's sale, which, although technically made by its independent distributor, benefitted J. McIntyre and resulted from J. McIntyre's own marketing efforts in the United States." Charles W. "Rocky" Rhodes, *Nineteenth Century Personal Jurisdiction Doctrine in a Twenty-First Century World*, 64 Fla. L. Rev. 387, 418 (2012). This court surely is not in a position to opine on whether Justice Breyer was correct. We should be cautious, however, about adopting his concurrence as our own precedent in light of the pointed criticisms about the concurrence's accuracy.

We are not in a position to offer the correct formulation of the stream-of-commerce theory. Indeed, we cannot express such an opinion because the Supreme Court has yet to come to a consensus on the proper formulation of that theory. Unless and until the Supreme Court does so, however, we are bound to follow our own case law that applies Supreme Court precedent in its current—albeit fractured—state.

Rather than relying on Justice Breyer's observation, we can easily conclude that personal jurisdiction does not lie based on a review of the allegations in the complaint.

---

for infringement of its rights" and the fact that the regional circuits remain divided about the proper articulation of the stream-of-commerce theory. *Beverly Hills Fan*, 21 F.3d at 1564. Personal jurisdiction principles addressed by the Supreme Court in non-patent cases, of course, may well be applicable in patent cases.

Having done so, we agree with the district court that AFTG failed to establish personal jurisdiction in Wyoming.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

AFTG-TG, LLC AND PHILLIP M. ADAMS &
ASSOCIATES, LLC,

*Plaintiffs-Appellants,*

v.

NUVOTON TECHNOLOGY CORPORATION AND
NUVOTON TECHNOLOGY CORPORATION
AMERICA,

*Defendants,*

AND

PEGATRON CORPORATION, PEGATRON
TECHNOLOGY SERVICE, INC., AND UNIHAN,

*Defendants-Appellees.*

———————————————

2011-1306

———————————————

AFTG-TG, LLC AND PHILLIP M. ADAMS &
ASSOCIATES, LLC,

*Plaintiffs-Appellants,*

v.

WINBOND ELECTRONICS CORPORATION and
WINBOND ELECTRONICS CORPORATION
AMERICA,

*Defendants,*

AND

**ASUSTEK COMPUTER INC. and ASUS COMPUTER INTERNATIONAL, INC.,**
*Defendants-Appellees,*

AND

**MSI COMPUTER CORP. and MICRO-STAR INTERNATIONAL CORPORATION LTD.,**
*Defendants.*

————————

2011-1307

————————

Appeals from the United States District Court for the District of Wyoming in case nos. 10-CV-0227 and 10-CV-0229, Judge Nancy D. Freudenthal.

————————

Before RADER, *Chief Judge*, NEWMAN, and O'MALLEY, *Circuit Judges.*

RADER, *Chief Judge*, concurring.

I agree the defendant-appellees' actions do not satisfy personal jurisdiction in Wyoming.  I write separately, however, to comment further on this court's application of *McIntyre Machinery, Ltd., v. Nicastro.*  131 S. Ct. 2780 (2011).

The per curiam opinion relies on precedent and declines to revise the jurisdictional standard, but notes the Supreme Court's divide in  *Asahi Metal Industry Co. v.*

*Superior Court of California* between Justice O'Connor's "stream of commerce plus" or "foreseeability plus" test and Justice Brennan's mere "foreseeability" test. 480 U.S. 102 (1987). As the narrowest holding among the plurality opinions, Justice Breyer's concurrence in *McIntyre* controls. *Marks v. United States*, 430 U.S. 188 (1977).

In the present case, the per curiam opinion contends Justice Breyer neither endorses Justice O'Connor's reasoning in *Asahi* nor provides a rule of law. However, the *McIntyre* concurrence clarifies that a single sale is inadequate "even if that defendant places his goods in the stream of commerce, *fully aware (and hoping) that such a sale will take place*" *McIntyre*, 131 S. Ct. at 2792 (emphasis added). By acknowledging a defendant's intent and awareness, Justice Breyer's concurrence departs from evaluating and establishing jurisdiction on mere "foreseeability." In support, the *McIntyre* concurrence cites Justice O'Connor's test "requiring 'something more' than simply placing 'a product into the stream of commerce,' even if defendant is 'awar[e]' that the stream 'may or will sweep the product into the forum State.'" *Id.* at 2792 (citing *Asahi*, 480 U.S. at 117). Justice Breyer applies Justice O'Connor's approach by emphasizing the relevant facts in *McIntyre* lacked "something more" to establish jurisdiction. *Id.*

Emphasis on assessing the presence of "something more" would clarify the muddled "stream of commerce" concept. Accordingly, this court would benefit from application of Justice Breyer's approach to personal jurisdiction. This court should examine the pleading and record to see if it evinces "something more" than a single sale or placement of goods into the stream of commerce (with knowledge that a sale may take place in the target forum state).

Consequently, from that vantage point, *Beverly Hills Fan*, with its unfettered reliance on a "stream of commerce" theory, is now shaky precedent to the extent that it runs counter to the *McIntyre* decision. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994). In finding defendants' contacts in the forum state provided sufficient warning they could be hailed into court, *Beverly Hills Fan* states that plaintiff's "allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel," notes "[t]he cause of action for patent infringement is alleged to arise out of these activities," and then concludes that "[n]o more is usually required to establish specific jurisdiction." *Beverly Hills Fan*, 21 F.3d at 1565. In the wake of the Supreme Court's guidance, this approach does not reflect the obligation to analyze the sufficiency of pleadings or record for "something more" that is necessary for personal jurisdiction.

In sum, the mere recitation of the stream of commerce theory is insufficient for a court's exercise of jurisdiction. This court might reliably require that "something more" be present to satisfy personal jurisdiction requirements. *McIntyre*, 131 S. Ct. at 2788, 2792.