# United States Court of Appeals for the Federal Circuit

---

**POLAR ELECTRO OY,**
*Plaintiff-Appellant*

**v.**

**SUUNTO OY,**
*Defendant-Appellee*

**AMER SPORTS WINTER & OUTDOOR, DBA SUUNTO USA, FIRSTBEAT TECHNOLOGIES OY,**
*Defendants*

---

2015-1930

---

Appeal from the United States District Court for the District of Delaware in No. 1:11-cv-01100-GMS, Judge Gregory M. Sleet.

---

Decided: July 20, 2016

---

JOHN P. MORAN, Holland & Knight, LLP, Washington, DC, argued for plaintiff-appellant. Also represented by ANTHONY J. FUGA, Chicago, IL.

JEFFERY A. KEY, Key & Associates, Chicago, IL, argued for defendant-appellee.

---

Before NEWMAN, LOURIE, and CHEN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Polar Electro Oy ("Polar") appeals from the decision of the United States District Court for the District of Delaware granting Suunto Oy's ("Suunto") motion to dismiss for lack of personal jurisdiction. *See Polar Electro Oy v. Suunto Oy*, No. 11-1100, 2015 WL 2248439 (D. Del. May 12, 2015). Because the district court erred in determining that Suunto lacked sufficient minimum contacts with Delaware to support specific jurisdiction, we *vacate* and *remand.*

## BACKGROUND

Polar, a Finnish company based in Finland, owns U.S. Patents 5,611,346 and 6,537,227, directed to a method and apparatus for measuring heart rates during physical exercise and athletic performance. Polar sued Suunto, Amer Sports Winter & Outdoor ("ASWO"), and Firstbeat Technologies Oy ("Firstbeat") in the United States District Court for the District of Delaware, alleging that the defendants infringed its patents, directly and indirectly, through the manufacture, use, sale, offer for sale, and importation of certain Suunto products.

Suunto is a Finnish company with a principal place of business and manufacturing facilities in Finland. ASWO is a Delaware corporation with a principal place of business in Utah. Suunto and ASWO are sister companies, ultimately owned by the same parent company. ASWO distributes Suunto's products in the United States pursuant to a distribution agreement. J.A. 352–66. Under that agreement, Suunto is responsible for supplying the products from Finland and for providing "outbound logistics services." J.A. 358.

As the supplier, Suunto is obligated to ship its products to addresses specified by ASWO. *Id.* According to Polar, the accused Suunto products are shipped via a

standard ordering process from Finland to the United States, which comprises: (1) Suunto receiving an order for a product; (2) Suunto packaging that order at its factory in Finland; (3) Suunto then placing the packaged product on its shipping dock for a third-party shipper to pick up; and (4) the third-party shipper delivering the order to an address provided by ASWO, such as the address of a U.S. retailer. Appellant's Br. 8.[*] ASWO pays for shipping, and title to the goods passes from Suunto to ASWO at Suunto's shipping dock in Finland. At least ninety-four accused products have been shipped from Finland to retailers in Delaware using that standard ordering process. J.A. 293–94. At least three retail stores in Delaware sell the accused Suunto products.

Suunto also owns the website, www.suunto.com/us. Customers can use the "Dealer Locator" feature on that website to locate retailers in Delaware that sell Suunto products. ASWO maintains that feature, however. In addition, customers can order Suunto products on the Suunto website. ASWO fulfills such online orders via an e-commerce platform that ASWO owns. At least eight online sales have been made in Delaware. J.A. 293–94.

In the district court, Suunto filed a motion to dismiss the complaint against it for lack of personal jurisdiction. The district court held Suunto's motion in abeyance while the parties conducted jurisdictional discovery. After the completion of jurisdictional discovery, Suunto renewed its

---

[*] The parties designated certain information in their merits briefs as confidential, but later informed the court that "the information in the merits briefs may be discussed at argument and included in any opinion." *Polar Electro Oy v. Amer Sports Winter & Outdoor*, No. 15-1930, ECF No. 50 (Fed. Cir. Apr. 29, 2016). Other materials designated as confidential in the joint appendix remain sealed. *Id.*

motion, which the district court granted without an evidentiary hearing. *Polar*, 2015 WL 2248439, at *1.

The district court first considered whether exercising jurisdiction over Suunto would be proper under the Delaware long arm statute, Del. Code Ann. tit. 10, § 3104(c). The court found that the specific-jurisdiction provisions, § 3104(c)(1) and (c)(3), were not met because Suunto did not *directly* sell the accused products in Delaware. *Polar*, 2015 WL 2248439, at *3. Nevertheless, the court found the long arm statute satisfied under a "dual jurisdiction" theory, as articulated by the Delaware Superior Court in *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1157–58 (Del. Super. Ct. 1997), *aff'd*, 707 A.2d 765 (Del. 1998), with the partial satisfaction of § 3104(c)(1) and (c)(4). *Polar*, 2015 WL 2248439, at *4. The court found that Polar demonstrated Suunto's "intent to serve the Delaware market"; and that "this intent result[ed] in the introduction of the product into the market and . . . [the] cause of action ar[ose] from injuries caused by that product." *Id.* The court noted that under the Delaware dual-jurisdiction law, an intent to serve the U.S. market is sufficient to establish an intent to serve the Delaware market. *Id.* (citing *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 373 (D. Del. 2008)). The court thus found that Polar proved the intent element based on Suunto's relationship with its U.S. distributor, ASWO.

The district court next considered whether exercising jurisdiction over Suunto comports with due process. The court relied on *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), and concluded that Suunto did not have sufficient contacts with Delaware to support specific jurisdiction. *Polar*, 2015 WL 2248439, at *5–6. The court found that Suunto sold its products through ASWO in the United States, and that the record only indicated that Suunto had a general intent to serve the U.S. market at large, without any particular focus on Delaware. Although ASWO's dealings with Delaware retailers and

customers were foreseeable, the court reasoned, there was not "something more" in Suunto's activities directed toward Delaware beyond placing its products into the stream of commerce. *Id.* at \*5. The court also noted that it was ASWO who maintained the "Dealer Locator" feature on Suunto's website, that the website listed Delaware along with other states, and that the limited online orders were fulfilled by ASWO, not Suunto. *Id.* The court thus reasoned that those facts did not show "special" attention to Delaware by Suunto. *Id.* The court therefore concluded that due process considerations prevented its exercise of jurisdiction over Suunto.

Accordingly, the district court dismissed the complaint against Suunto for lack of personal jurisdiction. ASWO and Firstbeat remained in the suit. Polar moved for entry of final judgment under Federal Rule of Civil Procedure 54(b). The district court granted the motion and entered final judgment in favor of Suunto and against Polar. Polar timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

In a patent case, we review a district court's determination of personal jurisdiction without deference, applying Federal Circuit law to jurisdictional issues that are "intimately involved with the substance of the patent laws." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) (internal quotation marks and citation omitted). We review any factual findings underlying the jurisdictional determination for clear error. *Id.*

In a case such as this, a plaintiff need only make a prima facie showing of personal jurisdiction where, as here, the parties conducted jurisdictional discovery, the jurisdictional facts are in dispute, and the district court determined personal jurisdiction without an evidentiary hearing. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). Under that prima facie

standard, the court must resolve all factual disputes in the plaintiff's favor. *Id.*

Determining whether personal jurisdiction over an out-of-state defendant is proper entails a two-part inquiry. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). First, a district court analyzes and applies the long arm statute of the state in which it sits to determine whether personal jurisdiction is proper under the statute. *Id.* Second, the court determines whether exercising jurisdiction over the defendant in the forum state comports with the Due Process Clause of the U.S. Constitution. *Id.* Here, because the district court's dismissal of Suunto is premised on its determination that due process considerations prevented its exercise of jurisdiction, we consider the due process inquiry first.

## I.   Due Process

Due process requires that the defendant have sufficient "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). Personal jurisdiction has two forms: specific and general. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012). General jurisdiction is not at issue here.

We apply a three-prong test to determine whether specific jurisdiction exists: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. ABBYY Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545–46 (Fed. Cir. 1995)). The first two prongs correspond to the "minimum contacts" prong of the *International Shoe* analysis, and the third prong corresponds to the "fair play

and substantial justice" prong of the analysis. *Elecs. for Imaging*, 340 F.3d at 1350. The plaintiff bears the burden of establishing minimum contacts, and upon that showing, the burden shifts to the defendant to prove that the exercise of jurisdiction would be unreasonable. *Id.*

Polar asserts a stream-of-commerce theory of personal jurisdiction over Suunto, but the precise requirements of the stream-of-commerce theory remain unsettled. In *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987), the Supreme Court was evenly divided over whether the mere awareness of a nonresident defendant that its products would foreseeably reach the forum state in the stream of commerce constitutes minimum contacts with the forum. Justice O'Connor, joined by three justices, opined that mere foreseeability or awareness is insufficient, and that there must be some additional conduct of the defendant purposefully directed toward the forum state. Justice O'Connor wrote:

> The "substantial connection" between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State . . . . But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi*, 480 U.S. at 112 (citations omitted).

Justice Brennan, joined by three other justices, disagreed with the O'Connor plurality. To those justices, mere foreseeability or awareness of the defendant that its product would wind up in the forum state is sufficient. Justice Brennan explained:

> As long as a participant in [the stream-of-commerce] process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. . . . A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.

*Id.* at 117 (Brennan, J., concurring in part and concurring in the judgment).

The Supreme Court revisited the stream-of-commerce issue in *McIntyre*, 564 U.S. 873 (2011), but the Court again did not announce a majority opinion on this issue. Justice Kennedy, writing for a plurality of four justices, emphasized that personal jurisdiction "depends on purposeful availment." 564 U.S. at 885; *id.* at 880 ("As a general rule, the sovereign's exercise of power requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). He explained that the principal inquiry is "whether the defendant's activities manifest an intention to submit to the power of a sovereign," that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have

targeted the forum," and that "it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* at 882. Justice Kennedy further opined that although the facts in *McIntyre* "may reveal an intent to serve the U.S. market, . . . they do not show that [the defendant] purposefully availed itself of the [forum state's] market." *Id.* at 886.

Justice Breyer, joined by Justice Alito, wrote separately and declined to join Justice Kennedy's plurality opinion. He declined to "announce a rule of broad applicability" because *McIntyre* did not present issues of "modern-day consequences" not anticipated by the Court's earlier precedents. *Id.* at 887 (Breyer, J., concurring in the judgment). Justice Breyer instead stated that "the outcome of this case is determined by our precedents," *id.*, and that he "would not go further," *id.* at 890.

Because *McIntyre* did not produce a majority opinion, we have held that we must follow its narrowest holding, which is what "can be distilled from Justice Breyer's concurrence—that the law remains the same after *McIntyre*." *AFTG-TG*, 689 F.3d at 1363 (citing *Marks v. United States*, 430 U.S. 188, 193 (1977)). Thus, we must follow our existing precedent. In *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994), this court declined to decide which of Justice O'Connor's and Justice Brennan's tests should be adopted because the outcome of that appeal would be the same under either test. Subsequent panels have followed that approach, as the resolution of the cases thus far has not required us to "take a side on the *Asahi* divide." *AFTG-TG*, 689 F.3d at 1364; *see also Celgard*, 792 F.3d at 1382; *Commissariat a L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1322 & n.7 (Fed. Cir. 2005); *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996). Here, we likewise decline to decide which version of the stream-of-commerce theory should apply

because, as indicated *infra*, the result would be the same under all articulations of the stream-of-commerce test.

Polar argues that the district court erred in concluding that Suunto did not have sufficient contacts with Delaware. According to Polar, (1) Suunto entered into a distribution agreement with ASWO to sell its products in the United States, including Delaware; (2) Suunto packaged and shipped at least ninety-four accused products to Delaware retailers; (3) Suunto owns a website, which makes the accused products available to Delaware consumers and lists retail stores in Delaware that carry those products; (4) there have been eight online sales of the accused products to Delaware consumers through Suunto's website; and (5) Suunto has ongoing warranty and data privacy obligations to its Delaware customers. Polar contends that those activities, individually and collectively, establish that Suunto had the required minimum contacts with Delaware.

Suunto responds that it did not purposefully direct its activities or products at Delaware, and that it merely placed its products into the stream of commerce from Finland. Suunto argues that Polar improperly attributes the acts of ASWO to Suunto without a showing of control, agency, or alter ego. Suunto maintains that it entered into an arms-length agreement with ASWO, pursuant to which ASWO purchases products from Suunto, takes title in Finland, and pays for and directs shipments to the United States. Suunto also maintains that it does not control marketing, distribution, or sales in the United States, and has not visited Delaware to market the accused products. Suunto also argues that online sales in Delaware are few and have been made exclusively by ASWO; that ASWO maintains the Dealer Locator feature on Suunto's website; and that ASWO is responsible for repairing and replacing products under warranty in the United States. Suunto emphasizes that Polar failed to show that Suunto specifically directed sales to Delaware.

We agree with Polar that Suunto has sufficient contacts with Delaware to sustain specific jurisdiction. The record shows that Suunto's actions satisfy the more stringent tests articulated by Justice O'Connor in *Asahi* and by Justice Kennedy in *McIntyre*, as well as the more flexible test articulated by Justice Brennan. Specifically, Suunto purposefully shipped at least ninety-four accused products to Delaware retailers, fully expecting that its products would then be sold in Delaware as a result of its activities. It thus can be said that Suunto's actions are purposefully directed to Delaware, indicating an intent and purpose to serve not only the U.S. market generally, but also the Delaware market specifically.

The record shows that Suunto entered into a distribution agreement with ASWO, its sister company, to market and distribute Suunto products in the United States. Under that agreement, Suunto is obligated to supply its products from Finland and provide outbound logistic services, including "incoming order administration, preparing export documents, invoicing the order, picking and packing the ordered goods and coordinating the freight to the destination specified by" ASWO. Appellant's Br. 28 (citing J.A. 358). Suunto has shipped at least ninety-four accused products to Delaware retailers via that standard ordering process. Although ASWO provided the destination addresses, took title to the goods in Finland, and directed and paid for shipping, it was Suunto, not ASWO, who physically fulfilled the orders, packaged the products, and prepared the shipments in Finland. Suunto admits as much. Oral Argument at 14:28–16:32, *Polar Electro Oy v. Amer Sports Winter & Outdoor*, No. 15-1930 (Fed. Cir. May 2, 2016). Through its own conduct, Suunto purposefully availed itself of the Delaware market.

This is not a case where a small manufacturer sells its products to an independent distributor, who then distributes the products to consumers across the nation. Suunto did not simply place its products in the stream of

commerce, with the products fortuitously reaching Delaware as a result of the unilateral effort of ASWO. Rather, "acting in consort" with ASWO, Suunto deliberately and purposefully shipped the accused products to Delaware retailers. *Beverly Hills Fan*, 21 F.3d at 1566. Suunto's active participation in supplying and shipping the accused products to Delaware thus constitutes purposeful availment.

Moreover, it is undisputed that this patent infringement action arises out of and relates to Suunto's purposeful shipping of the accused products to Delaware. Polar therefore has made a prima facie showing of minimum contacts under all articulations of the stream-of-commerce test. Because Suunto's purposeful shipping adequately supports minimum contacts, we need not decide whether the other facts argued by Polar, namely, Suunto's website, the eight online sales, and the warranty and data privacy obligations, constitute purposeful availment by Suunto.

Upon a showing of purposeful minimum contacts, due process also requires a showing that "assertion of personal jurisdiction is reasonable and fair." *Nuance*, 626 F.3d at 1231. Suunto bears the burden to prove unreasonableness. *Elecs. for Imaging*, 340 F.3d at 1350. In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *see also Beverly Hills Fan*, 21 F.3d at 1568. Here, however, the district court did not decide the reasonableness prong because it dismissed the case against Suunto for lack of minimum contacts. On appeal, neither party briefed this issue. Rather than deciding this issue in the first instance, we remand for the district court to determine whether exercising jurisdiction over Suunto would be reasonable and fair.

Accordingly, because we conclude that Suunto has sufficient minimum contacts with Delaware, we vacate the district court's determination that it lacked personal jurisdiction over Suunto and remand for the district court to determine whether exercising jurisdiction over Suunto would be reasonable and fair.

## II. Delaware Long Arm Statute

We next consider whether the district court correctly determined that exercising jurisdiction over Suunto would be proper under the Delaware long arm statute, Del. Code Ann. tit. 10, § 3104(c), which provides, in relevant part:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> > (1)   Transacts any business or performs any character of work or service in the State; [or]
> >
> > . . .
> >
> > (4)   Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .

Del. Code Ann. tit. 10, § 3104(c) (West 2016).

The district court determined that personal jurisdiction exists over Suunto under a dual jurisdiction theory. The dual jurisdiction theory is based on at least partial satisfaction of § 3104(c)(1) and (c)(4). It was first articulated by the Delaware Superior Court in a stream-of-commerce case in 1997. *Boone v. Oy Partek Ab*, 724 A.2d

1150 (Del. Super. Ct. 1997), *aff'd*, 707 A.2d 765 (Del. 1998).

Suunto argues that the district court erred in finding that the Delaware long arm statute was satisfied. According to Suunto, the dual jurisdiction theory is based on § 3104(c)(4), which requires a showing of general jurisdiction. Suunto argues that Polar failed to establish general jurisdiction and thus cannot rely on the dual jurisdiction theory. Polar responds that the district court correctly applied Delaware's dual jurisdiction theory and correctly found that Suunto's activities satisfy the long arm statute under that theory. Polar also responds that the dual jurisdiction theory as articulated in *Boone* does not require a showing of general jurisdiction.

We agree with Polar that the district court correctly applied the dual jurisdiction theory in this case. It may seem counterintuitive that the dual jurisdiction theory does not demand the full satisfaction of any individual subsection of the Delaware long arm statute. But to date, no Delaware state court has rejected that theory. Indeed, the Delaware Supreme Court has had opportunities to reject the theory, but has declined to do so. *See Graphics Props. Holdings, Inc. v. ASUS Comput. Int'l*, 70 F. Supp. 3d 654, 661 (D. Del. 2014) (collecting cases). The district courts in Delaware have applied the dual jurisdiction theory in several patent cases. *See, e.g., Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 672–76 (D. Del. 2014); *Graphics Props.*, 70 F. Supp. 3d at 659–62; *Intellectual Ventures I LLC, v. Ricoh Co.*, 67 F. Supp. 3d 656, 660–61 (D. Del. 2014); *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267–68 (D. Del. 2010); *Power Integrations*, 547 F. Supp. 2d at 370–74. *But see Round Rock Research LLC v. ASUSTeK Comput. Inc.*, 967 F. Supp. 2d 969, 975–78 (D. Del. 2013). Although the *Boone* decision is not binding on this court or the district court, we conclude that the district court did not err in applying the dual jurisdiction theory in this case.

We also agree with Polar that the dual jurisdiction theory as articulated in *Boone* does not require a showing of general jurisdiction. The *Boone* court opined that a stream-of-commerce case often "does not fit neatly into any section of § 3104," 724 A.2d at 1157, that § 3104(c)(4) "has been deemed a general jurisdiction provision," *id.* at 1155, and that the stream-of-commerce theory "rests on a specific rather than general jurisdiction rationale," *id.* at 1156. The reasoning of the *Boone* court indicates that the dual jurisdiction theory does not require a showing of general jurisdiction or the full satisfaction of § 3104(c)(4). Rather, under *Boone*, a plaintiff must show that (1) "there is an intent or purpose on the part of the [defendant] to serve the Delaware market," and (2) that "intent or purpose . . . results in the introduction of the product to [Delaware] and plaintiff's cause of action arises from injuries caused by that product." *Id.* at 1158.

Here, Suunto's activities demonstrated its intent to serve the Delaware market. As indicated *supra*, the record here demonstrates an intent to serve not only the U.S. national market generally, but also the Delaware market specifically. Moreover, it is undisputed that the accused products have been sold in Delaware as a result of Suunto's intent to serve the Delaware market. Accordingly, the district court correctly determined that personal jurisdiction over Suunto is proper under the Delaware long arm statute.

## CONCLUSION

We have considered Suunto's remaining arguments but find them to be unpersuasive. For the foregoing reasons, we vacate the district court's determination that it lacked personal jurisdiction over Suunto and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

COSTS

Costs to Polar.