**George PIECZENIK and I.C. Technologies America, Inc., Plaintiffs–Appellants,**

**v.**

**DYAX CORPORATION, Defendant– Appellee.**

**No. 00–1519.**

United States Court of Appeals, Federal Circuit.

Sept. 17, 2001.

George Pieczenik, of New York, NY, argued for plaintiffs-appellants.

Christopher J. Harnett, Fish & Neave, of New York, NY, argued for defendant-appellee. With him on the brief were James F. Haley, Jr., and Hallie Kostrinsky. Of counsel was Robert B. Wilson.

Before MICHEL, BRYSON, and DYK, Circuit Judges.

BRYSON, Circuit Judge.

The plaintiffs filed this patent infringement action in the United States District Court for the Southern District of New York. Following discovery on the issue of jurisdiction, the district court granted the defendant's motion to dismiss the action for lack of personal jurisdiction. The plaintiffs have appealed, contending that the defendant has sufficient contacts with New York to give the district court personal jurisdiction under the applicable

New York long-arm statute. We agree with the district court that the plaintiffs have failed to show that the defendant's contacts with New York are sufficient to give the district court jurisdiction over the defendant. We therefore affirm the judgment of the district court dismissing the action.

## I

Plaintiff George Pieczenik is the inventor named in three patents that are asserted against the defendant Dyax Corporation: U.S. Patent No. 4,359,535 ("the '535 patent"), which claims autonomously replicating DNA and unique vector populations derived from filamentous bacteriophage; U.S. Patent No. 4,528,266 ("the '266 patent"), which claims methods for preparing the DNA and vector populations claimed in the '535 patent; and U.S. Patent No. 5,866,363 ("the '363 patent"), which claims a method for identifying specific peptide sequences on proteins that are recognized by antibodies. The three patents are licensed to co-plaintiff I.C. Technologies America, Inc.

Dyax owns four United States patents relating to phage display binding technology. The plaintiffs contend that the four Dyax patents are dominated by the Pieczenik patents. In their complaint, the plaintiffs alleged that Dyax directly infringed all three Pieczenik patents by "making and/or using, and/or selling, and/or offering to sell" products and methods falling within the scope of the Pieczenik patents. Additionally, the plaintiffs alleged that Dyax induced infringement of the Pieczenik patents by licensing the rights under the subservient Dyax patents to companies located in New York and elsewhere.

Dyax filed a motion to dismiss the complaint for lack of personal jurisdiction, contending that Dyax did not have sufficient contacts with the State of New York to give the district court personal jurisdiction over Dyax based on New York's long-arm statute, New York Civil Practice Law and Rule ("CPLR") §§ 301, 302(a)(1) and 302(a)(2). Section 301 of the CPLR permits New York courts to exercise general personal jurisdiction if the defendant's activities within New York are "continuous and systematic." Section 302(a)(1) permits New York courts to exercise specific personal jurisdiction if the defendant "transacts any business" within New York or "contracts anywhere to supply goods or services in the state." Section 302(a)(2) permits New York courts to exercise specific personal jurisdiction over a defendant who "commits a tortious act within the state."

The district court permitted the parties to conduct discovery with respect to the jurisdictional issue. The discovery proceedings revealed that Dyax has no facilities, property, employees, subsidiaries, operations, bank accounts, or telephone listings in New York. In addition, discovery disclosed that although Dyax has registered in New York as a broker-dealer and has appointed the New York Secretary of State to receive process for any securities actions against it, Dyax is not registered to do business in New York and does not pay corporate taxes in New York.

The plaintiffs argued that the extent and nature of Dyax's contacts with New York were sufficient to permit the district court to exercise personal jurisdiction over Dyax with respect to the claims set forth in the complaint. Among the arguments made by the plaintiffs were the two that they have continued to press on appeal. First, the plaintiffs asserted jurisdiction based on two agreements between Dyax and Pall Corporation, a New York company, under which Dyax agreed to provide services for Pall. Pursuant to one of those

agreements, Dyax constructed three ligands and sent them to Pall in New York. According to the plaintiffs, the process that Dyax used to make those ligands "employed sequencing vectors encompassed by claims of the ['535 Pieczenik] patent." Second, the plaintiffs argued that the district court had jurisdiction over Dyax based on an agreement between Dyax and Ortho-Clinical Diagnostics, Inc., another New York company, which granted Ortho-Clinical Diagnostics a license to practice the technology protected by Dyax's phage display patents.

Following a hearing, the district court ruled that none of the New York statutes provided any basis for exercising personal jurisdiction over Dyax. The court first found that it did not have general personal jurisdiction over Dyax, because the evidence did not show that Dyax did business in New York on a continuous and systematic basis and because none of Dyax's other contacts with New York established the "fair measure of permanence and continuity" that is required by the "doing business" test under section 301 of the New York CPLR. With respect to section 302(a)(1), the court concluded that neither Dyax's collaborative activities with Pall Corporation nor its licensing agreement with Ortho-Clinical Diagnostics was sufficient to provide the required substantial nexus between the cause of action and the defendant's activities in New York. Finally, the district court rejected the plaintiffs' argument that personal jurisdiction over Dyax was established under section 302(a)(2) of the New York CPLR. The court noted that section 302(a)(2) requires the defendant to commit a tort while physically present in New York State and concluded that the plaintiffs had failed to show that Dyax committed any act related to the lawsuit while present in New York.

The plaintiffs filed a motion for reconsideration limited to the two arguments they had made under section 302(a)(1) of the New York CPLR. The district court denied the motion for reconsideration, and the plaintiffs took this appeal.

## II

■ We note at the outset that the plaintiffs have filed a second lawsuit in the District of Massachusetts relating to the same underlying conduct. Based on the pendency of that lawsuit, Dyax argues that this appeal is moot. We disagree. The plaintiffs have made it clear at all times that they would prefer to proceed in New York; presumably they filed the subsequent suit in Massachusetts in order to have a complaint on file in a district in which the court clearly has jurisdiction over the defendant in the event that we affirm the dismissal of the New York action. Whenever two such parallel actions are pending in different districts, the two district judges may coordinate their respective proceedings to avoid duplication of effort, and of course a judgment on the merits in one of the two cases will presumably be res judicata as to the action in the other. But there is nothing about the filing of the Massachusetts action that renders the New York action moot. Dyax has failed to adduce any pertinent legal support for its mootness argument, and we reject it out of hand.

## III

■ In their brief on appeal, the plaintiffs confine their argument to the portion of the district court's decision relating to section 302(a)(1) of the CPLR. At oral argument in this court, Dr. Pieczenik appeared pro se and sought to present new arguments that were not raised in the plaintiffs' opening brief (or, for that matter, in their reply brief). It is well settled that an appellant is not permitted to make new arguments that it did not make in its

opening brief. *See Regents of the Univ. of Cal. v. Eli Lilly & Co.,* 119 F.3d 1559, 1566, 43 USPQ2d 1398, 1404 (Fed.Cir. 1997); *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 800, 17 USPQ2d 1097, 1103 (Fed.Cir.1990). Accordingly, we address only the arguments presented in the plaintiffs' opening brief, not the additional arguments made for the first time at oral argument.

The argument made in the plaintiffs' brief on appeal is that the district court had personal jurisdiction over Dyax under section 302(a)(1) of the New York CPLR. The plaintiffs based that argument on the collaborative arrangement with Pall Corporation and the licensing agreement with Ortho-Clinical Diagnostics. We agree with the district court that neither of those transactions satisfies the requirements of section 302(a)(1) of the New York CPLR, and we therefore hold that the district court correctly dismissed the complaint for lack of personal jurisdiction.

■ Determining whether the district court has jurisdiction over an out-of-state defendant involves two inquiries: whether the forum state's long-arm statute permits service of process and whether the assertion of personal jurisdiction would violate due process. *See Genetic Implant Sys., Inc. v. Core–Vent Corp.,* 123 F.3d 1455, 1458, 43 USPQ2d 1786, 1788 (Fed.Cir. 1997); Fed.R.Civ.P. 4(k)(1)(A) (service of process is effective to establish jurisdiction over the person of a defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located"). Because New York's long-arm statute does not reach to the limits of due process, *see Talbot v. Johnson Newspaper Corp.,* 71 N.Y.2d 827, 527 N.Y.S.2d 729, 522 N.E.2d 1027, 1029 (1988), the inquiry in this case is confined to whether a New York court would have jurisdiction over Dyax based on the conduct alleged in the complaint and in the plaintiffs' response to Dyax's motion to dismiss.

■ Interpreting New York and Second Circuit cases, we have held that for a court to assert jurisdiction over a defendant under section 302(a)(1), the plaintiff must satisfy two requirements:

(1) the defendant's business activities in New York must be activities by which the defendant projects itself into New York in a way as to purposefully avail itself of the benefits and protections of New York laws and (2) the plaintiff's cause of action must arise out of that business activity within the state.

*Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1386, 47 USPQ2d 1622, 1625 (Fed.Cir.1998). The second requirement, the so-called nexus test, is interpreted very narrowly by New York courts. *Id.* A single business transaction is sufficient to satisfy the nexus test under section 302(a)(1), but "the cause of action must arise from the transaction of business in New York." *McShan v. Omega Louis Brandt et Frere, S.A.,* 536 F.2d 516, 518 (2d Cir.1976); *Fontanetta v. Am. Bd. of Internal Med.,* 421 F.2d 355, 357 (2d Cir.1970); *see Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, 852 (1967). We agree with the district court that neither of the two transactions relied upon by the plaintiffs to establish personal jurisdiction over Dyax satisfies the nexus test as applied by the New York courts.

■ 1. Under the first of the two agreements between Dyax and Pall Corporation, which the parties entered into in July 1997, Pall agreed to pay Dyax "to evaluate the performance of a phage derived ligand for contaminant removal when attached to a membrane or fibrous surface." Dyax performed the work under that agreement in Massachusetts. Under the second agreement between the two,

which was entered into in November 1997, Pall paid Dyax "to discover and develop a [phage derived] ligand for removal of human pavovirus b19" from "process feed streams of human origin." That work was also performed in Massachusetts. Pursuant to the two agreements, Dyax sent three protein ligands to Pall and was paid for the work. The agreements between Pall and Dyax terminated in 1998.

In the district court, the plaintiffs argued that the court had jurisdiction over Dyax based on the allegation that Dyax used vectors encompassed by the claims of the Pieczenik '535 patent in making the ligands that Dyax sent to Pall Corporation. Even if that allegation is true, however, it is not sufficient to give the New York district court personal jurisdiction over Dyax, because the ligands were made in Massachusetts.

The plaintiffs have never contended that the products sent to Pall Corporation infringed the '535 patent; instead, their argument has been that the infringement occurred in the course of the process by which those products were made. For that reason, the cause of action for direct infringement, if any, arose from Dyax's activities in Massachusetts, not from any activities in New York. By the time the ligands were delivered to Pall Corporation in New York, the infringement, if any, of the '535 patent was already complete. The plaintiffs' showing that Dyax made and delivered the ligands pursuant to an agreement with a New York company is thus not sufficient to satisfy the "nexus test" as applied by the New York courts.

■ 2. The second transaction on which the plaintiffs rely—Dyax's agreement to license its patents to Ortho-Clinical Diagnostics—is also insufficient to give the district court personal jurisdiction over Dyax, for a different reason.

The plaintiffs argue that Dyax's patents are dominated by the Pieczenik patents and that by licensing Ortho-Clinical Diagnostics to practice the Dyax patents, Dyax actively induced Ortho-Clinical Diagnostics to infringe the Pieczenik patents, in violation of 35 U.S.C. § 271(b). According to the plaintiffs, the act of inducement—the licensing of Dyax's patents—took place in New York and therefore constituted a business transaction having a sufficient nexus to the infringement claim to satisfy section 302(a)(1) of the New York CPLR.

■ The parties conducted discovery related to the jurisdictional issues and advised the district court that no evidentiary hearing was necessary with respect to the issue of personal jurisdiction because the jurisdictional facts were undisputed. Under those circumstances, the plaintiffs bore the burden of proving by a preponderance of the evidence the facts necessary to establish personal jurisdiction over the defendant. *See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990).

In determining whether a cause of action based on a contractual relationship arises from business activities by which the defendant has projected itself into New York "in such a way as to purposefully avail itself of the benefits and protections of New York laws," *Graphic Controls,* 149 F.3d at 1386, the New York courts have looked to a number of factors. Those factors include: (1) whether there is an on-going relationship between the defendant and a New York corporation; (2) whether the contract in question was negotiated or executed in New York; (3) the extent of the defendant's visits to New York in connection with the contract; (4) whether the contract contains a choice-of-law provision identifying New York law as governing the disputes arising under the contract; and (5) whether the contract requires the defendant to provide goods and services in New York or send notices and

payments into New York. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996).

Analyzing the plaintiffs' proof in light of those factors, the district court correctly concluded that the plaintiffs failed to satisfy their burden of showing that the court had personal jurisdiction over Dyax with respect to the induced infringement claims. The only asserted contact with New York pertaining to the induced infringement claims was Dyax's licensing agreement with Ortho-Clinical Diagnostics, a Delaware corporation with its principal place of business in New York. As the district court noted, however, the plaintiffs failed to show that the agreement was negotiated or executed in New York; indeed, during oral argument before the district court the plaintiffs' attorney disavowed any reliance on the place where the agreement was negotiated. Moreover, the plaintiffs did not show that Dyax representatives visited New York in connection with the licensing agreement, and the choice-of-law provision in the contract specified that Massachusetts law would govern disputes arising under the contract. The agreement did not require Dyax to send any goods into New York or provide any services in New York, and the only payments called for by the agreement were payments by Ortho-Clinical Diagnostics in New York to Dyax in Massachusetts.

The New York courts have made it clear that the mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business under section 301(a)(1) of the CPLR. *See Success Mktg. Elecs., Inc. v. Titan Sec., Inc.*, 204 A.D.2d 711, 612 N.Y.S.2d 451 (N.Y.App.Div.1994). Moreover, the grant of licensing rights to a New York corporation does not constitute the transaction of business within the meaning of the New York long-arm statute. *See Standard Wine & Liquor Co. v. Bombay Spirits Co.*, 20 N.Y.2d 13, 281 N.Y.S.2d 299, 228 N.E.2d 367 (1967); *Ferrante Equip. Co. v. Lasker–Goldman Corp.*, 26 N.Y.2d 280, 309 N.Y.S.2d 913, 258 N.E.2d 202 (1970). In *Standard Wine*, the defendant Bombay had granted to a New York corporation "the sole and exclusive right to sell [Bombay] Products within the New York Metropolitan areas." 281 N.Y.S.2d 299, 228 N.E.2d at 368. The New York Court of Appeals noted that Bombay "maintains no offices, bank account, telephone listing or warehouse for the storage of goods here.... Instead, Bombay has given the exclusive rights to market its spirits." *Id.* Under such an arrangement, the court held that it was "perfectly evident that Bombay does not transact 'any business within the state.'" *Id.* at 369. In *Ferrante*, the defendant's only New York contact was an agreement by the defendant to indemnify the plaintiff for a contract to be performed by a third party in New York. The court noted that "[t]he mere receipt by a nonresident of benefit or profit from a contract performed by others in New York is clearly not an act by the recipient in this State sufficient to confer jurisdiction under our long-arm statute." 309 N.Y.S.2d 913, 258 N.E.2d at 205.

Under New York law, activities conducted by an in-state party are not attributable to an out-of-state defendant unless the in-state party is regarded as an agent of the defendant. *See, e.g., J.E.T. Adver. Assocs., Inc. v. Lawn King, Inc.*, 84 A.D.2d 744, 443 N.Y.S.2d 745, 747 (N.Y.App.Div.1981). To establish agency, the plaintiff "must convince the court that [the agent] engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the [defendant] and that [the defendant] exercised some control over [the agent] in the matter." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 527

N.Y.S.2d 195, 522 N.E.2d 40, 44 (1988). In this case, the plaintiffs failed to establish an agency relationship between Dyax and Ortho-Clinical Diagnostics with respect to the licensing agreement, because they failed to show that Ortho-Clinical Diagnostics conducted any activities pursuant to the licensing agreement for the benefit of Dyax and, as the district court found, they failed to show that Dyax exercised any control over Ortho-Clinical Diagnostics under the licensing agreement.

Finally, the licensing agreement is not sufficient to confer personal jurisdiction over Dyax merely because it provides for multiple payments over time. In *Worldwide Futgol Associates, Inc. v. Event Entertainment, Inc.*, 983 F.Supp. 173 (E.D.N.Y.1997), the defendant was required to pay a New York plaintiff multiple installments for the licensing rights to broadcast three soccer matches between October 30, 1996, and November 6, 1996. The court concluded that since the defendant's only New York contacts relating to the contract consisted of telephone calls and telefax messages, the defendant had not transacted business sufficient to confer personal jurisdiction over the defendant, notwithstanding that the contract provided for multiple payments by the defendant over a period of time. *Id.* at 177.

On review of the record, we agree with the district court's conclusion that, despite unrestricted discovery on the issue of jurisdiction and an opportunity for an evidentiary hearing on that issue, the plaintiffs failed to offer preponderant evidence of activities by Dyax in New York in connection with the licensing agreement with Ortho-Clinical Diagnostics. All that the plaintiffs were able to show with regard to the licensing agreement was the mere existence of a contract between Dyax and a corporation domiciled in New York. Under the standards applied by New York state and federal courts, that showing was insufficient to satisfy the plaintiffs' burden under section 302(a)(1) of the New York long-arm statute to prove that Dyax transacted business in New York having a nexus to the induced infringement claims. The district court was therefore correct to dismiss the plaintiffs' induced infringement claims for want of personal jurisdiction over the defendant.

*AFFIRMED.*