# United States Court of Appeals for the Federal Circuit

---

**CELGARD, LLC,**
*Plaintiff-Appellant*

v.

**SK INNOVATION CO., LTD.,**
*Defendant-Appellee*

---

2014-1807

---

Appeal from the United States District Court for the Western District of North Carolina in No. 3:13-cv-00254-MOC-DSC, Judge Max O. Cogburn, Jr.

---

Decided: July 6, 2015

---

MARTIN RICHARD LUECK, Robins, Kaplan, Miller & Ciresi, LLP, Minneapolis, MN, argued for plaintiff-appellant. Also represented by ANDREW DOUGLAS HEDDEN, JAMIE R. KURTZ; BRYAN J. VOGEL, New York, NY.

J. MICHAEL JAKES, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, argued for defendant-appellee. Also represented by CHARLES THOMAS COLLINS-CHASE, HALA S. MOURAD; CORTNEY SCOTT ALEXANDER, Atlanta, GA; CHARLES HYUK SUH, Reston, VA.

---

Before NEWMAN, REYNA, and WALLACH, *Circuit Judges.*

REYNA, *Circuit Judge.*

Celgard, LLC appeals the dismissal of its patent infringement suit by the United States District Court for the Western District of North Carolina for lack of personal jurisdiction. The district court determined it lacked personal jurisdiction over SK Innovation Co., Ltd. ("SKI") under either a purposeful-direction theory or a stream-of-commerce theory. For the reasons set forth below, we *affirm* the dismissal.

## I. BACKGROUND

### A. THE PARTIES AND THEIR BUSINESSES

Celgard is a developer and manufacturer of battery membranes. The membranes Celgard develops are used to separate chemical cell components in lithium-ion batteries, preventing contact between the positive and negative electrodes. Celgard developed a separator technology that uses a ceramic composite coating that helps prevent electrical shorting. Celgard obtained a patent for the ceramic-coated separator technology, United States Patent No. 6,432,586 (" '586 patent"). This technology is used in rechargeable batteries in several emerging industries, including electronic vehicles ("EV") and consumer electronic ("CE") devices such as laptops and cellular phones. Celgard is headquartered in Charlotte, North Carolina.

SKI is a manufacturer of separators for use in lithium-ion batteries. SKI mainly supplies the separators to third-party manufacturers. But SKI also manufactures batteries that include the separators it produces. SKI's principal place of business is in Seoul, Korea. All of SKI's design, manufacturing, and sales operations are based in Korea.

## B. Procedural History

In April 2013, Celgard sued SKI for infringement of the '586 patent in the Western District of North Carolina. Celgard alleged in the complaint that SKI's separators infringed the '586 patent. Celgard sought to establish the district court's jurisdiction based on allegations that SKI purposefully directed activities at the forum state through sales and offers for sale of its accused separators to residents of North Carolina. J.A. 66. The complaint did not specify to whom the offers or sales were made.

SKI moved to dismiss the complaint for lack of personal jurisdiction on the basis of an absence of evidence that SKI ever sold or offered for sale the accused products in North Carolina. J.A. 129–31. In support of its motion, SKI provided a sworn declaration from a senior manager of SKI, stating that all of SKI's sales are to customers outside of the United States. J.A. 111. The declarant stated that SKI had no knowledge of any established sales channels in North Carolina for its battery separators, and that SKI had no control over where or to whom SKI's customers subsequently sold or distributed batteries incorporating SKI's separators. *Id.* SKI, through the declarant, agreed to be subject to specific personal jurisdiction in New York State. J.A. 113.

Celgard opposed SKI's motion. In its opposition, Celgard continued to assert that SKI was subject to personal jurisdiction under a purposeful-direction theory, based on offers for sale to a customer in North Carolina. J.A. 146. Celgard argued that jurisdiction was proper under a stream-of-commerce jurisdictional theory, based on alleged sales by SKI to third-party manufacturers of CE devices who, in turn, offer the devices for sale in North Carolina. *Id.* Celgard also filed an alternative motion for jurisdictional discovery related to sales and offers for sale of the accused products in North Carolina. J.A. 307.

The district court granted Celgard's motion to conduct jurisdictional discovery. J.A. 85. It also denied SKI's motion to dismiss for lack of personal jurisdiction without prejudice to SKI's right to renew its motion following jurisdictional discovery. J.A. 108. During jurisdictional discovery, Celgard deposed SKI's 30(b)(6) witness, subpoenaed numerous third parties, and obtained discovery from EV distributor Kia Motors of America ("KMA") and CE manufacturers Dell and Apple. Appellant's Br. 10; *cf.* J.A. 704, 725. Neither party requested a jurisdictional hearing, and the court did not conduct one.

After the close of jurisdictional discovery, SKI renewed its motion to dismiss for lack of personal jurisdiction. SKI argued that jurisdictional discovery failed to establish jurisdiction on the basis of sales or offers for sale of the accused products in North Carolina, or that SKI directed any activities to that state. J.A. 701–03. SKI further argued that Celgard could not base jurisdiction on a stream-of-commerce theory because Celgard produced no evidence that any of SKI's accused products had been present in North Carolina. J.A. 704. Celgard opposed SKI's renewed motion to dismiss.

SKI's motion came before a magistrate judge, who recommended that SKI's motion to dismiss be granted and that the case be dismissed for lack of personal jurisdiction. J.A. 8. The magistrate judge explained that jurisdictional discovery "revealed precious little, if any contacts between SKI and North Carolina." J.A. 4. The magistrate judge found that there was no evidence of SKI having sold or offered to sell its products into the forum state. J.A. 7. Further, none of SKI's products had been found in North Carolina. The magistrate judge also found that there was no evidence that SKI had made any sales or offers to sell in North Carolina. J.A. 7. Thus, the magistrate judge concluded that there was no basis to exercise personal jurisdiction over SKI under either a

purposeful-direction or stream-of-commerce theory. J.A. 7.

Celgard moved for reconsideration of the magistrate judge's recommendation. The magistrate judge denied Celgard's motion for reconsideration. After Celgard objected to the magistrate judge's recommendation and the denial of its motion for reconsideration, the district court judge adopted the magistrate judge's recommendation and dismissed the case for lack of personal jurisdiction. J.A. 16.

Celgard appeals the dismissal for lack of personal jurisdiction. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## I. DISCUSSION

On appeal, Celgard contends two types of contacts establish personal jurisdiction in North Carolina. First, Celgard argues a "purposeful direction" jurisdictional theory, under which the advertisements of two Kia automobile dealers located in North Carolina, which suggest that the 2015 Kia Soul EV would be available for purchase in North Carolina in late 2014, confer personal jurisdiction upon the district court. Second, Celgard advances a "stream of commerce" theory, relying on SKI's sales in the CE market to original equipment manufacturers ("OEMs") who distribute the products nationwide, including in North Carolina.

## A. GOVERNING LAW

We review a district court's determination on personal jurisdiction without deference, applying our own law when a patent question exists. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012) (citations omitted).

Our determination of whether a defendant is subject to specific personal jurisdiction in the forum state in-

volves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

Due process requires that the defendant have sufficient "minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks and citation omitted). We determine whether the due process requirement for specific personal jurisdiction is met by considering (1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair. *Grober*, 686 F.3d at 1346 (quoting *Elecs. for Imaging*, 340 F.3d at 1350). The plaintiff bears the burden of affirmatively establishing the first two elements of the due process requirement. *Elecs. for Imaging*, 340 F.3d at 1350. If the plaintiff meets its burden, the burden shifts to the defendant to prove that personal jurisdiction is unreasonable. *Id.* "The first two factors correspond with the 'minimum contacts' prong" of *International Shoe*, "and the third factor corresponds with the 'fair play and substantial justice' prong." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

The parties dispute whether Celgard must prove the existence of personal jurisdiction under a prima facie standard or a preponderance of the evidence standard. Celgard contends that it need only make a prima facie showing of jurisdiction because the district court did not hold an evidentiary hearing. SKI disagrees, arguing that the burden is one of a preponderance of the evidence because the parties conducted extensive jurisdictional discovery and no jurisdictional hearing was necessary.

The district court agreed with Celgard and applied the prima facie standard.

We agree with the district court. When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden. *Elecs. for Imaging*, 340 F.3d at 1349. On the other hand, we have explained that the preponderance standard applies where the parties conduct jurisdictional discovery but no jurisdictional hearing was necessary because the parties indicated to the district court that the jurisdictional facts were not in dispute. *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001).

In this case, jurisdictional discovery was conducted and the district court did not conduct a jurisdictional hearing, but we see no indication that the parties agreed that the jurisdictional facts were not in dispute. Because the parties do not agree on the jurisdictional facts, the exception in *Pieczenik* does not apply. As such, Celgard must make a prima facie showing of jurisdiction. Under the prima facie burden, the district court must resolve all factual disputes in the plaintiff's favor in evaluating the jurisdictional question. *See, e.g.*, *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002).

The parties do not contest whether jurisdiction was proper under North Carolina's long-arm statute. Hence, we consider only the due process inquiry as it relates to Celgard's purposeful-direction and stream-of-commerce theories.

## B. Celgard's Purposeful-Direction Theory

Celgard's purposeful-direction theory of jurisdiction is based only on SKI's involvement in the EV market. Celgard contends that SKI has purposefully directed its

activities to North Carolina residents through a joint venture, allegedly with "Kia," to develop batteries for the 2015 Kia Soul EV. Appellant's Br. 23. Celgard argues that the joint venture demonstrates the 2015 Kia Soul EV was actively marketed in North Carolina. This marketing activity is allegedly shown by the advertisements of the two Kia dealers that suggest that the Soul EV would be coming soon to dealerships in North Carolina. According to Celgard, these ads constitute offers for sale under 35 U.S.C. § 271(a), supporting jurisdiction in North Carolina. Celgard contends that it is irrelevant that the ads were placed by the dealers, and not by SKI, because when a defendant exploits the "typical industry medium" to reach customers, it has purposefully directed activities to the forum, establishing jurisdiction. Appellant's Br. 25 (quoting *Momenta Pharm., Inc. v. Amphastar Pharm., Inc.*, 841 F. Supp. 2d 514, 520–21 (D. Mass. 2012)).

SKI responds that Celgard cannot show that SKI purposefully directed activity toward North Carolina because it was the dealers, not SKI or KIA, who made the statements that the Soul EVs were soon to arrive in North Carolina. SKI argues that to succeed on its purposeful-direction theory of jurisdiction, Celgard must show that the dealers were either SKI's alter ego or its agents. SKI claims that Celgard makes no effort to show the dealers are SKI's alter ego, and that Celgard has not provided evidence as to agency since SKI does not have any relationship with the Kia dealers or a right to control them. SKI points out that it has no joint-venture agreement with KMA; the agreement is with KMC, KMA's parent corporation. SKI argues that Celgard has not shown a chain of imputation from the dealers to KMA to KMC to SKI, as would be necessary to show jurisdiction under an agency theory. SKI also contends that Celgard has failed to show that SKI has any relationship at all with the dealers.

We agree with SKI that personal jurisdiction cannot be established based on any SKI activity directed toward North Carolina. There is no record evidence that SKI purposefully directed its activities, related to the Kia Soul EV or otherwise, toward the forum state. Thus, we next consider whether the activities of another party, which acted on SKI's behalf, could be imputed to SKI, and thus establish jurisdiction over SKI

For purposes of specific personal jurisdiction, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory. In order to establish jurisdiction under the agency theory, the plaintiff must show that the defendant exercises control over the activities of the third-party. *See, e.g.*, *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014) ("[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."). In *Red Wing Shoe*, we rejected the notion that an agency relationship existed between the defendant and its licensees because the defendant did not exercise control over the licensees. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998). Alternatively, a plaintiff may establish personal jurisdiction under an alter ego theory. In *Nuance*, we found that the out-of-state corporate defendant purposefully availed itself of the forum state through an entity acting as its alter ego. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1232–33 (Fed. Cir. 2010). The in-state, named defendant sold the software of a sister company in the forum state. The named defendant operated as the alter ego of the sister company, as shown by both entities being commonly owned and not transacting at arms-length, and by nearly all of the named defendant's profits flowing back to the sister company. *Id.*

Here, Celgard does not point to any evidence on the record establishing that the dealers were operating either as SKI's agents or alter egos. The record does not show

any attempt by SKI to purposefully direct or control the activities of the dealers in North Carolina. As such, Celgard has not shown the requisite control for jurisdiction to be premised on the acts of agents. Similarly, Celgard has not alleged facts sufficient to base jurisdiction on the acts of an alter ego. The joint venture agreement is insufficient to establish jurisdiction under an alter ego theory because the agreement is between SKI and KMC, a company that is based in Korea. While KMC is the parent company of KMA, there is no evidence that KMA or the two Kia dealers were aware of the joint venture agreement, or that the advertisements were in any way related to the joint venture. Nor is there any evidence of common control of the Kia dealers and SKI, or any flow of profits from the former to the latter. Put simply, there is no evidence of any relationship between SKI and the North Carolina Kia dealers. Absent such evidence, Celgard cannot establish personal jurisdiction by arguing that SKI was directing its activities to North Carolina through the Kia dealers there.

We conclude that, the posting of the internet pages by the North Carolina dealers were unilateral actions taken by third parties unrelated to SKI. The Supreme Court has forbidden the exercise of jurisdiction over a defendant on the basis of unilateral acts of third-parties. In *Hanson v. Denckla*, the Supreme Court explained that the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State" because it is essential that the *defendant* take actions purposefully availing him or her of the privileges and benefits of the forum state. 357 U.S. 235, 253-54 (1958) (citing *Int'l Shoe*, 326 U.S. at 319). This purposeful-availment requirement is tied to the principle that a defendant should be able to reasonably foresee litigation in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980);

*Hanson*, 357 U.S. at 253). Indeed, the purposeful-availment requirement ensures that a foreign defendant will not be unexpectedly "haled into a jurisdiction solely as a result of . . . the unilateral activity of . . . a third person." *Id.* at 475. Thus, the unilateral advertising activities of the Kia dealers do not support the exercise of jurisdiction over SKI in North Carolina.

Celgard has failed to allege facts that allow it to meet its burden under a purposeful-availment theory of jurisdiction. We hold that the district court was correct in declining to exercise jurisdiction over SKI based on any activity of SKI directed at the forum state, the joint agreement between SKI and KMC, or the unilateral actions of the two Kia dealers.

### C. Celgard's Stream-of-Commerce Theory

Celgard asserts an alternative, stream-of-commerce theory of personal jurisdiction over SKI. This theory is based on SKI's participation with CE manufacturers to use their established distribution channels to avail SKI of the North Carolina market. Celgard points out that neither this court, nor the Supreme Court, has decided whether stream-of-commerce jurisdiction requires merely placing goods into the stream of commerce with the expectation that they would be purchased in the forum state, or if "something more" is required, i.e., the purposeful direction of activities toward the forum. Appellant's Br. 26–27.

Celgard argues that, under either formulation of the stream-of-commerce theory, minimum contacts to satisfy due process are established whenever a defendant purposefully uses an established distribution channel that brings the defendant's products into the forum. According to Celgard, personal jurisdiction exists if the plaintiff can show that (1) the defendant purposefully takes advantage of the channel; and (2) the channel reaches the forum state. Celgard contends that SKI satisfies these require-

ments because it sells separators to other companies, with established distribution channels, that incorporate the infringing separators into CE devices that are sold in North Carolina as a result of those channels. Celgard alleges that its tests show that separators have been found in batteries in CE devices purchased in North Carolina that are consistent with SKI separators. Appellant's Br. 13–14.

SKI acknowledges that neither this court nor the Supreme Court have answered whether mere placement into the stream of commerce is sufficient to establish jurisdiction, or if "something more" (activities directed at the forum state) is required. Appellee's Br. 30. SKI contends there is no jurisdiction under either test. SKI alleges that Celgard failed to identify a single accused product in North Carolina. SKI points out that while Celgard asserts that tests of products purchased in North Carolina are consistent with the use of SKI separators, Celgard does not show that the tested products use the ceramic coated separator required by the '586 patent. Moreover, Celgard acknowledges that SKI is not the sole supplier for the manufacturers that supply batteries to Apple and Dell.

Celgard replies that SKI's biggest customers provide a "significant portion" of batteries to Apple and Dell, and that these companies sell their products in North Carolina. Reply Br. 7–8. Celgard argues that, when combining these facts with the results of its tests, the only reasonable inference is that SKI's accused products have made their way into North Carolina. Celgard further argues that this evidence, coupled with SKI's inability to show that its products were not in North Carolina, meets the prima facie burden, because it is more likely than not that SKI's accused products were present in large quantities in North Carolina.

The precise requirements of the stream-of-commerce theory of jurisdiction remain unsettled. Whether mere placement into the stream of commerce is sufficient to establish jurisdiction, or whether intent that the products reach the forum is required, can be traced to *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987). Justice Brennan, joined by three other justices, opined that mere foreseeability that the defendant's product would wind up in the forum state was sufficient to establish jurisdiction. To Justice Brennan, due process is satisfied when the defendant places a product into the stream of commerce while being "aware that the final product is being marketed in the forum State." *Id.* at 117 (Brennan J., concurring in part). Due process is satisfied because the defendant directly benefits from "the retail sale of the final product in the forum State" and indirectly benefits from the "laws that regulate and facilitate commercial activity." *Id.* Justice O'Connor wrote separately and was joined by three justices. Justice O'Connor contended that something more than the foreseeability of entry of the defendant's products into the forum state was required because that low threshold does not guarantee that due process' purposeful-availment requirement is met. According to Justice O'Connor a "substantial connection . . . between the defendant and the forum State" must arise out of the activities of the defendant that are "purposefully directed toward the forum State." *Id.* at 112 (citations and quotation marks omitted). Merely placing "a product into the stream of commerce, *without more*, is not an act of the defendant purposefully directed toward the forum State." *Id.* (emphasis added).

The Supreme Court recently reconsidered the requirements for establishing jurisdiction under a stream-of-commerce theory in *McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). Again, the Court did not reach consensus on whether something more than foreseeability

is required. Writing for a plurality of the Court, Justice Kennedy held that jurisdiction over the defendant was improper under a stream-of-commerce theory because the defendant had not purposefully availed himself of the forum state's laws. Specifically, the jurisdictional facts did not "reveal an intent to invoke or benefit from the protection of" the laws of the forum state. *Id.* at 2791.

This court also has declined to take a position on the requirements of a stream-of-commerce jurisdictional test because the resolution of the cases did not require us to do so. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364–65 (Fed. Cir. 2012) (discussing cases). Similarly, in this case, we do not need to resolve the question as the results of the case are the same under either formulation of the stream-of-commerce test.

Celgard is not able to meet the more flexible foreseeability standard articulated by Justice Brennan in *Asahi*. As Justice Brennan explained, due process is satisfied under the foreseeability standard when the defendant is aware that the product is being marketed in the forum state. *Asahi*, 480 U.S. at 117 (Brennan J., concurring in part). The defendant's knowledge gives rise to both the direct benefit from the retail sale of the defendant's product and the indirect benefits related to the laws enabling commerce in the forum state. *Id.* Celgard has not provided evidence that SKI was aware that its accused separators were marketed in North Carolina. The record evidence shows only that SKI sells its products to OEMs, who then sell completed batteries to CE manufactures that resell them in the United States. There is no evidence establishing that SKI's products actually enter the forum state. Celgard's evidence shows only that tests of separators from batteries taken from CE devices purchased in North Carolina are not inconsistent with SKI's separators. Those tests do not rule out that other manufacturers' separators do not have similar composition or that the separators were certainly manufactured by SKI.

Indeed, Celgard is unable to demonstrate that its own separators are present in North Carolina.

Celgard's evidence fails to show that SKI's separators actually have been found in North Carolina, much less that SKI can foresee that its separators will make their way there. Celgard's inability to show that SKI can foresee that its separators will make their way to North Carolina also necessarily implies that SKI did not also have "something more," a purposeful availment of the privileges and laws of North Carolina, as required by Justice O'Connor's formulation of the stream-of-commerce test. *Id.* at 112 (plurality opinion). We hold that the district court correctly declined to exercise jurisdiction under a stream-of-commerce theory.

## CONCLUSION

The district court correctly declined to exercise personal jurisdiction over SKI under either a purposeful-direction theory or a stream-of-commerce theory. We note that Celgard is not without remedy, as SKI consented to be subject to jurisdiction in New York. Accordingly, we *affirm* the district court's dismissal of the complaint without prejudice.

**AFFIRMED**