# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-2993

ROBERT M. SELLERS, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 1, 2018                                    Decided August 23, 2018)

*Kenneth M. Carpenter* of Topeka, Kansas, with whom *John F. Cameron*, of Montgomery, Alabama, was on the brief for the appellant.

*Nathan Paul Kirschner* and *Carolyn F. Washington*, Deputy Chief Counsel, with whom *James M. Bryne*, General Counsel, and *Mary Ann Flynn*, Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and SCHOELEN and ALLEN, *Judges*.

ALLEN, *Judge*: U.S. Navy veteran Robert M. Sellers suffers from depression. He appeals through counsel an April 29, 2016, Board of Veterans' Appeals (Board) decision denying an effective date earlier than September 18, 2009, for his service-connected major depressive disorder (MDD) and a higher initial disability rating for MDD.[1] This matter was referred to a panel of the Court, with oral argument, to determine whether a claimant's general statement of intent to seek benefits, combined with in-service medical diagnoses documented in service treatment records, is sufficient to constitute a valid claim for benefits.

We hold that a general statement of intent to seek benefits, coupled with a reasonably identifiable in-service medical diagnosis reflected in service treatment records in VA's possession prior to the RO making a decision on the claim may be sufficient to constitute a claim for benefits.

---

[1] The Board remanded the issues of increased ratings for spondylolisthesis of the lumbosacral spine, right index and middle finger injuries, and a left knee disability, and service connection for a bilateral ankle disability. Accordingly, these issues are not before the Court. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order). The Board also granted service connection for PTSD and a total disability rating based on individual unemployability. These are favorable factual findings the Court may not disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007). Finally, the Board also denied an earlier effective date for the appellant's 40% lumbosacral disability rating. As the appellant presents no argument as to this issue, the Court deems it abandoned. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

Whether service treatment records reasonably identify a claimed disability is a fact-specific inquiry. That inquiry was not made here. Accordingly, we set aside the Board's decision and remand this matter for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

The appellant served honorably on active duty in the U.S. Navy from April 1964 to February 1969, and in the U.S. Army from January 1981 to February 1996. In November 1993, he was examined by a military psychiatrist to determine fitness for duty. Noting that the appellant had symptoms of depression and "prominent" insomnia for the past 2 to 3 years, Record (R.) at 2930, the psychologist diagnosed dysthymia and concluded that the appellant's psychiatric symptoms were not "severe enough to make him unfit for duty." *Id.*

In April 1995, the appellant's commanding officer recommended that he undergo an involuntary acute emergency mental health evaluation because he threatened to commit suicide and had engaged in other "irrational" behavior. The commanding officer described him as "angry" and a possible threat to himself. R. at 2943. Later that month, the appellant underwent extensive psychological testing. The examiner diagnosed a personality disorder and recommended further examination to rule out dysthymia. R. at 2923. On May 1, 1995, the appellant was admitted to a psychiatric center where he was diagnosed with dysthymia and a personality disorder with obsessive-compulsive traits. R. at 2924.

In March 1996, the appellant filed a formal claim for VA disability benefits, listing various physical injuries as disabilities. He also stated that he had already received in-service treatment for several of those physical injuries. In a section entitled "Remarks," the appellant wrote: "Request [service connection] for disabilities occurring during active duty service." R. at 2687. This statement plays a major role in this appeal. VA adjudicated the appellant's physical disability claims but did not adjudicate any mental health claims at that time.

In September 2009, the appellant filed an informal claim for service connection for PTSD, which the VA regional office (RO) denied in a March 2011 decision. In May 2011, a VA compensation and pension (C&P) examiner diagnosed the appellant with MDD and PTSD. A VA psychiatrist opined in July 2011 that the appellant's MDD began in service. In a September 2011 decision, the RO then granted service connection for MDD at a 70% rating, effective May 13, 2011. In October 2011, the appellant timely disagreed with both the March and September 2011

2

decisions and ultimately perfected appeals to the Board. A decision review officer then awarded an earlier effective date for the appellant's MDD, September 3, 2010.

On April 29, 2016, the Board issued a decision awarding the appellant an effective date of September 18, 2009 for MDD and a higher initial rating for MDD. Regarding its assignment of September 18, 2009, as the effective date for MDD, the Board stated:

> [A]n effective date of September 18, 2009, and no earlier, is warranted for the grant of service connection for the Veteran's psychiatric disability (major depressive disorder or MDD). The record shows that VA received on September 18, 2009, an informal claim for service connection for psychiatric disability, claimed as PTSD. It is noted that, when a claimant makes a claim, he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled.

> However, there is no legal basis for the assignment of an effective date earlier than September 18, 2009 for the award for service connection for MDD because the effective date of the award is the date of receipt of the claim or the date entitlement arose, whichever is later. In this case, the later date is September 18, 2009.

> The Board observes that VA received no claim (informal or otherwise) for service connection for any psychiatric disability prior to September 19, 2009. Notably, prior to this date, VA had not received any correspondence from the Veteran or a representative since 1996. Also, although the Veteran had filed an original VA compensation claim in April 1971[2] and a claim for benefits in March 1996, these did not include any claim for psychiatric disorder or problems that could be reasonably construed as a claim for service connection for psychiatric disability.

R. at 20 (citations omitted). This appeal followed.


## II. ANALYSIS

Generally, the effective date of a claim for benefits is the date VA received the claim or the date on which entitlement arose, whichever is later. *See* 38 U.S.C. § 5110(a). The elements of any claim, formal or informal,[3] are "(1) an intent to apply for benefits, (2) an identification of the benefits sought, and (3) a communication in writing[.]" *Brokowski v. Shinseki*, 23 Vet.App. 79, 84 (2009); *see also MacPhee v. Nicholson*, 459 F.3d 1323, 1325 (Fed. Cir. 2006); *Criswell v. Nicholson*, 20 Vet.App. 501, 504 (2006); *Brannon v. West*, 12 Vet.App. 32, 35 (1998). A veteran's identification of the benefits sought does "not require any technical precision" and VA "must fully

---

[2] In June 1971, the appellant was granted service connection for bilateral hearing loss.

[3] As of September 25, 2015, VA no longer recognizes informal claims. *See* 79 Fed. Reg. 57,660-01 (2015). In their place, VA recognizes "an intent to file a claim," which may be submitted electronically, on a prescribed intent-to-file-a-claim form, or through an oral communication to certain VA employees that is later recorded in writing. 38 C.F.R. §§ 3.155(b)(1)(i)-(iii) (2018).

and sympathetically develop a veteran's claim to its optimum before reaching the claim on its merits." *Brokowski*, 23 Vet.App. at 85; *see also Ingram v. Nicholson*, 21 Vet.App. 232, 256-57 (2007). In *Brokowski,* the Court held that VA "is not required to anticipate a claim for benefits for disabilities *that have not been identified in the record by medical professions* or by competent lay evidence at the time a claimant files a claim or during the claim's development." 23 Vet.App. at 88 (emphasis added). But "the Board is not required to conjure up issues that were not raised by the appellant." *Brannon*, 12 Vet.App. at 35; *see also Criswell*, 20 Vet.App. at 503-04 (same).

A. March 1996 Claim for Benefits for a Psychiatric Disability

The appellant argues his general statement of an intent to seek "[service connection] for disabilities occurring during active duty service," combined with VA's actual possession of his service treatment records, is sufficient to constitute a valid claim for a psychiatric disability. The Secretary argues in response that the Board properly determined the appellant had not submitted a claim in March 1996 for a psychiatric disability because general statements do not sufficiently "identify the benefit sought" as required under *Brokowski*, 23 Vet.App. at 89.[4]

The Secretary is correct that a general statement of intent to seek benefits for unspecified disabilities standing alone is insufficient to constitute a claim. Yet, the Secretary's argument misses a crucial additional factor present here: evidence of reasonably identifiable in-service diagnoses of psychiatric conditions that predate the appellant's claim were in the possession of the RO before it rendered its rating decision. The disability at issue here was identified in the record by military medical professionals well before the appellant filed his March 1996 claim, R. at 777, 2922-43, and the record was in VA's possession at the time of the initial decision, R. at 2667 (July 1996 rating decision listing "[s]ervice medical records for the period [April 17, 1964,] through [January 22, 1969,] and the period [February 20, 1981,] through [February 26, 1996,] as "Evidence"). Further, the appellant's mental health issues were well documented in those records. They reflect that the appellant's mental health was a subject of serious concern while he was in the military as he was twice diagnosed with dysthymia, subjected to extensive psychological testing, evaluated for retention purposes, and involuntarily hospitalized. It is undisputed on appeal to the Court that the appellant was diagnosed in service with a psychiatric condition. But what is not clear is whether

---

[4] There is no dispute that the appellant's statement was in writing and clearly expressed an intent to apply for some benefit. The only dispute is whether this written intent sufficiently identified the benefits he asserts now that he sought in 1996.

that diagnosis was reasonably identifiable by VA adjudicators at the time of his putative formal claim in March 1996 or prior to the RO's deciding the claim. As we explain below, whether an in-service diagnosis in a veteran's service records is reasonably identifiable by VA adjudicators at the time a claimant seeks benefits or prior to the RO's deciding the claim is a factual determination for the Board.

As a general principle, VA may not ignore in-service diagnoses of specific disabilities, even those coupled with a general statement of intent to seek benefits, provided those diagnoses are reasonably identifiable from a review of the record.[5] But, we are cognizant of the difficulties that VA adjudicators would face when confronted with a general statement of intent to apply for benefits for conditions experienced in service. Service medical records reflecting such conditions could be voluminous and, even if they are not, the records could reflect numerous conditions. The fact finder must determine, based on the totality of the service medical record, both qualitatively and quantitatively, whether the condition at issue would be sufficiently apparent to an adjudicator.

To assist the Board in this endeavor, we provide the following thoughts on the types of factors that may be relevant to the Board's inquiry. These are not the only factors the Board may find helpful as it makes its assessment on this factual question. They are merely illustrations of factors that may be relevant to the Board's assessment. Qualitatively, for example, service medical records might contain many notes of conditions ranging from descriptions of trivial conditions (a hangnail) to full-blown diagnoses of significant illnesses (PTSD). And the record might describe certain conditions in great detail or, in contrast, in only a passing manner. Or, for example, medical records could contain vague complaints of symptoms regarding a condition but no formal diagnosis.

Quantitatively, the sheer volume of medical records may potentially be a factor in determining whether a condition would have been reasonably identifiable to a VA adjudicator. For example, the Board could decide that a single diagnosis reflected in a single page of a 2,000-page service record is not reasonably identifiable. Whether this is the case here is a factual question that the Board must address in the first instance, and the Board must provide support its determination

---

[5] Like the *Brokowski* Court, we do not reach the question whether a general statement of intent to seek benefits, standing alone, is sufficient to trigger the Secretary's statutory obligation to notify claimants of the incomplete nature of an application, because the appellant did not argue this theory. *See* 38 U.S.C. § 5102(b) ("If a claimant's application for a benefit . . . is incomplete, the Secretary shall notify the claimant and the claimant's representative, if any, of the information necessary to complete the application.").

with adequate reasons and bases. *See Washington v. Nicholson*, 19 Vet.App. 362, 367-68 (2005) (explaining that it is the Board's duty, as fact finder, to determine the credibility and weight to be given to the evidence).

Because the Board did not assess whether the medical record is such that the disability in question was reasonably identifiable, it did not appropriately consider this issue and, thus, remand is warranted. On remand the Board must determine whether the appellant's in-service records reflect a reasonably identifiable diagnosis of a psychiatric condition given the nature of the records at issue and, if necessary, reconsider its determination concerning the proper effective date of the appellant's MDD accordingly. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is warranted "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

In sum, we recognize the Court's warning in *Brokowski* that general statements of intent "cannot be used as a pleading device to require the Secretary to conduct an unguided safari through the record to identify all conditions for which the veteran may possibly be able to assert entitlement to a claim for disability compensation," 23 Vet.App. at 89, and we emphasize that our holding here is a narrow one. Only records containing diagnoses that are reasonably identifiable from a review of the record may otherwise cure an insufficient general statement of intent to seek benefits. To continue *Brokowski*'s metaphor, we caution that VA at most must participate in a fully guided safari.

## B. Higher Initial MDD Rating

The appellant also appeals the Board's denial of a higher initial rating for MDD, raising arguments concerning the Board's discounting of a March 2016 vocational expert opinion and its consideration of 38 C.F.R. § 4.130, Diagnostic Code (DC) 9434. Addressing these arguments would be premature, however, and they are better left to the Board in the first instance. The weight to be accorded to the expert opinions of record might change depending on the DC at issue, and the relevant DC depends on what effective date the Board assigns. The DC in effect at the time of the appellant's March 1996 claim required that a claimant show at least one of three different factors for a 100% rating. *See* 38 C.F.R. § 4.132, DC 9411 (1996). This Court held in *Johnson v. Brown* that each of those factors provided an independent basis for the award of a 100% rating. 7 Vet.App. 95, 97 (1994). Additionally, the Court upheld the Secretary's interpretation of DC 9411 to mean that a claimant who was assigned a 70% rating for a psychiatric disability and who was

unable to work would be entitled to a 100% rating. *Id.* Here, the vocational expert opined that the appellant's "psychological disability alone precludes all competitive employment in the national economy," R. at 89, and that the accommodations his psychological disability requires "preclude competitive work of any kind," R. at 90. These findings appear to fall under at least one of DC 9411's factors as they existed in March 1996. *See* 38 C.F.R. § 4.132, DC 9411 (providing for a 100% rating where a claimant shows he or she "was demonstrably unable to obtain or retain employment"). Alternatively, the appellant might be entitled to a 70% rating under the March 1996 version of DC 9411 but be elevated to a 100% rating under *Johnson*. Either way, these determinations are best left to the Board in the first instance. S*ee Washington*, 19 Vet.App. at 367-68.

Finally, we caution the Board that it cannot reject a vocational expert's opinion merely because it is not a medical opinion. Vocational experts can be necessary depending on the facts of a particular case. *See Smith v. Shinseki*, 647 F.3d 1380, 1386 (Fed. Cir. 2011). While the Board is entitled to discount or reject the *medical* conclusions of a vocational examiner, it cannot discount the *vocational* conclusions of a vocational examiner simply because he or she is not a medical professional. No law, regulation, or precedent requires that an examination be conducted by an examiner with a particular expertise or specialty. Instead, an examination must be performed by someone with the "education, training, or experience" necessary to provide an opinion. 38 C.F.R. § 3.159(a)(1).

Thus, because the legal standard the Board may use to analyze the probative value of the vocational opinion may change, the Court holds that the appellant's arguments concerning the March 2016 vocational expert opinion and the correct DC to apply are inextricably intertwined with the issue of an earlier effective date, and the Court and will not address them further. *See Harris v. Derwinski*, 1 Vet.App. 180 (1991).

In pursuing his case on remand, the appellant is free to submit additional evidence and argument, including the arguments raised in his briefs to this Court, in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and the Board must consider any such evidence or argument submitted, *Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and the Board must proceed expeditiously, in keeping with 38 U.S.C. §§ 5109B and 7112.

7

## C. Tinnitus Claim

The appellant also argues the Board erred by failing to refer a purportedly pending claim for service connection for tinnitus to an RO for adjudication. He asserts that a May 1996 C&P examiner's note that the appellant reported tinnitus "explicitly raised" a claim for service connection for that condition. The Secretary argues the Board did not err because no evidence of record reasonably raised such a claim. As the appellant's counsel conceded at oral argument, Oral Argument at 30:05-31:20, *Sellers v. O'Rourke*, U.S. Vet. App. No. 16-2993, (oral argument held May 1, 2018), http://www.uscourts.cavc.gov/oral_arguments_audio.php, this Court lacks jurisdiction to decide this issue because there is no final Board decision on the matter and thus the Court will not consider this issue further. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Jarrell v. Nicholson*, 20 Vet.App. 326, 331 (2006) (en banc) (holding that the Court may exercise its jurisdiction only over claims that are the subject of a final Board decision).

Where a claim is "in an unadjudicated state due to the failure of the Secretary to process" it, the claimant's remedy is "to pursue a resolution of the original claim, e.g., to seek issuance of a final RO decision with proper notification or appellate rights and initiate [a Notice of Disagreement]." *DiCarlo v. Nicholson*, 20 Vet.App. 52, 56 (2006). "If the Secretary fails to process the claim, then the claimant can file a petition with this Court challenging the Secretary's refusal to act." *Id.* at 57 (citing *Costanza v. West*, 12 Vet.App. 133, 134 (1999)).

## D. Other Issues Raised at Oral Argument

At oral argument, the appellant's counsel advanced an argument that was not presented in the briefing. In the briefs, the appellant seemed to argue that his March 1996 claim included an informal claim for MDD. *See, e.g.*, Appellant's Reply Brief at 2-4. But at oral argument, counsel made very clear that he was raising an alternative argument for the first time, Oral Argument at 4:30-4:53, 26:45-27:22, 43:46-43:55, even stating that the arguments made in the briefs concerning informal claims were incorrect, Oral Argument at 38:57-39:20, 41:00-41:16.

The Court generally will not entertain arguments raised by counsel at oral argument for the first time. *See, e.g.*, *McFarlin v. Conseco Servs., L.L.C.*, 381 F.3d 1251, 1263 (11th Cir. 2004) ("A party is not allowed to raise at oral argument a new issue for review."); *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1332-33 (Fed. Cir. 2001) (finding that "[i]t is well settled that an appellant is not permitted to make new arguments that it did not make in its opening brief" and not addressing arguments presented for the first time at oral argument); *Tarpley v. Greene*, 684 F.3d 1, 7 n.17

(D.C. Cir. 1982) ("Clearly, oral argument on appeal is not the proper time to advance new arguments or legal theories.").

Moreover, "[t]his Court and the U.S. Court of Appeals for the Federal Circuit have repeatedly discouraged parties from raising arguments that were not presented in an initial brief to the Court." *Norvell v. Peake*, 22 Vet.App. 194, 201 (2008); *see also Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("Improper or late presentation of an issue or argument . . . ordinarily should not be considered."), *aff'd sub nom. Carbino v. Gober*, 10 Vet.App. 507, 511 (1997); *Fugere v. Derwinski*, 1 Vet.App. 103, 105 ("Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation."). "[T]he practice of presenting new issues and arguments during oral argument is even more objectionable." *Norvell*, 22 Vet.App. at 202. Though the Court is aware that the appellant's counsel who presented oral argument was not the same counsel who wrote the briefs, counsel could have alerted the Court and the Secretary's counsel to the new argument. We strongly urge counsel to avoid this approach to oral argument in the future. To be clear, the Court will not consider the arguments the appellant's counsel advanced for the first time at oral argument in his matter.

### III. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the Board's April 29, 2016, decision denying an effective date earlier than September 18, 2009, for the award of service connection for MDD is SET ASIDE and the matter REMANDED for further proceedings consistent with this decision.